THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANFORTH & ASSOCIATES, INC.,

Plaintiff,

v.

COLDWELL BANKER REAL ESTATE, LCC,

Defendant.

CASE NO. C10-1621

ORDER

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 13), Plaintiff's response (Dkt. No. 16) and Defendant's reply. (Dkt. No. 19.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and DENIES the motion in part for the reasons explained herein.

## I. BACKGROUND

This case concerns a series of franchise agreements between the parties. In 2001, Defendant granted Plaintiff the right to operate a Coldwell Banker franchise in Federal Way, Washington ("2001 Agreement"). (2001 Agreement (Dkt. No. 13 at Ex. A).) In 2008, Plaintiff acquired an existing Coldwell Banker franchisee, Del Bianco Realty, Inc. ("Del Bianco"). As a

result of this acquisition, Del Bianco and Coldwell Banker entered into a second agreement ("2008 Agreement"), granting Plaintiff the right to open a second franchise on 156th Street in Seattle, Washington. (2008 Agreement (Dkt. No. 13 at Ex. B).) An addendum to the 2008 Agreement granted Plaintiff the right to open a third franchise on North Way, in Seattle. (*Id.*) In 2009, the 2008 Agreement was assigned from Del Bianco to Plaintiff ("Assignment Agreement"). (Assignment Agreement (Dkt. No. 13 at Ex. C).) As a condition for the opening of this franchise, Plaintiff agreed to a no-hire provision, by which Plaintiff is prevented from hiring or recruiting former agents from Landover Corporation, a Coldwell Banker franchisee operating under the name Coldwell Banker Bain ("Bain").

Throughout the duration of the agreements, Plaintiff has been required to comply with a set of franchisee standards governing matters such as office décor, marketing, and signage. (*See* 2001 Agreement ¶ 8.10 (Dkt. No. 13 at Ex. A).) Plaintiff alleges that Bain has been permitted to depart from those standards. (Complaint ¶¶ 37–39 (Dkt. No. 1).) In 2010, Plaintiff sought to open a fourth franchise in Bellevue, Washington. (Complaint ¶¶ 27 & 28 (Dkt. No. 1).) Defendant denied this request. (*Id.* at ¶¶ 29 & 30.)

Plaintiff filed an action in this Court alleging breach of contract as well as violation of the Sherman Act, the Washington Franchise Investor Protection Act, and the Washington Consumer Protection Act. (*Id.* at ¶¶ 43–54.)

## II. APPLICABLE LAW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint has stated a claim "plausible on its face" when it "pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In reviewing Defendant's motion, then, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of Plaintiffs. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). Although Rule 12(b)(6) does not require courts to assess the probability that a plaintiff will eventually prevail, the allegations made in the complaint must cross "the line between possibility and plausibility of 'entitlement to relief'": if the facts are merely consistent with Defendant's liability but cannot ground a reasonable inference that Defendant actually is liable, the motion to dismiss will succeed. Iqbal, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

## III. DISCUSSION

### A. Breach of Contract

Plaintiff argues that Defendant breached the duty of good faith and abused its discretion in declining Plaintiff's request for a new franchise. There is no merit to these claims. Plaintiff's complaint incorporates by reference all three agreements between the parties and these agreements explicitly show that Defendant had no obligation to grant Plaintiff additional franchise locations. The 2001 Agreement states that it "shall not be construed as granting [Plaintiff] any right to purchase any additional franchise" from Defendant. (2001 Agreement ¶ 15.4 (Dkt. No. 13 at Ex. A).) The 2008 Agreement states that it "shall not grant [Plaintiff] any right to purchase an additional franchise[.]" (2008 Agreement ¶ 5.3 (Dkt. No. 13 at Ex. B).) Likewise, the Assignment Agreement states: "Any additional locations desired to be opened by [Plaintiff] must first be approved by [Defendant] in the manner provided in the [2008 Agreement]." (Assignment Agreement ¶ 6 (Dkt. No. 13 at Ex. C).) The Agreements between the parties could not be clearer: Defendant is under no obligation to entertain applications for

additional franchises and whatever decision Defendant makes is solely within its discretion. Plaintiff argues that it "certainly has a right to discover why its application was denied," yet it provides no basis in the agreements for such a right. Plaintiff has failed to allege sufficient facts to create a plausible basis to believe that Defendant breached its agreements.

**B. Sherman Act**

Next, Plaintiff alleges that there is an unlawful conspiracy between Defendant and Bain to unreasonably restrain Plaintiff's expansion in violation of the Sherman Act. (Complaint ¶ 43 (Dkt. No. 1).) This claim is flawed in at least two ways. First, Plaintiff alleges no facts to support the existence of a conspiracy. Second, Plaintiff alleges no unlawful behavior; the Supreme Court and Ninth Circuit have made clear that coordinated activity between a franchisor and a franchisee does not implicate the Sherman Act.

Section 1 of the Sherman Act states, "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. . ." 15 U.S.C. § 1. However, not every business collaboration encompassed by this broad language is illegal—courts have determined that only those combinations that "unreasonably restrain trade" and harm competition run afoul of the first section of the Sherman Act. Big *Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999). In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), the Supreme Court held that a corporation and its wholly owned subsidiaries were legally incapable of "conspiring" for the purposes of § 1. *Id.* at 771. In *Williams v. I.B. Fischer Nevada*, 999 F.2d 445, 447–48 (9th Cir. 1993), the Ninth Circuit applied *Copperweld*'s reasoning to an agreement between a franchiser and franchisee. *See also Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. Cal. 2005). Defendant and Bain are in a franchisor-franchisee

relationship and therefore cannot conspire within the meaning of the Sherman Act as alleged in the complaint. Again, Plaintiff has failed to state a plausible claim.

**C. Franchise Investment Protection Act**

Next, Plaintiff alleges that 1) Defendant's rejection of Plaintiff's latest franchise request, 2) the no-hire provision, and 3) Defendant's allowance of a different set of standards for Bain amounted to bad faith and discrimination in violation of the Franchise Investment Protection Act. FIPA states that it is an unfair or deceptive act or practice or an unfair method of competition for any franchisor to:

> (c) Discriminate between franchisees in the charges offered or made for royalties, goods, services, equipment, rentals, advertising services, or in any other business dealing, unless and to the extent that the franchisor satisfies the burden of proving that any classification of or discrimination between franchisees is: (i) Reasonable, (ii) based on franchises granted at materially different times and such discrimination is reasonably related to such difference in time, or is based on other proper and justifiable distinctions considering the purposes of this chapter, and (iii) is not arbitrary. However, nothing in (c) of this subsection precludes negotiation of the terms and conditions of a franchise at the initiative of the franchisees.

RCW 19.100.180(2)(c). Defendant responds that the different treatment of franchisees is not discrimination because a) FIPA expressly contemplates territorial protection for different franchisees, b) Plaintiff initiated the idea of a no-hire provision, and c) the Plaintiff's agreements were signed at materially different times from the Bain agreements.

With respect to Defendant's decision not to grant Plaintiff an additional franchise, the Court agrees with Defendant that Plaintiff has failed to state a claim. Plaintiff acknowledges in its complaint that Defendant had granted Bain an exclusive right to expand in King County weeks prior to signing any agreement with Plaintiff. (Complaint ¶¶ 15–16 (Dkt. No. 1).) FIPA explicitly protects exclusive territorial grants. *See* RCW 19.100.180(2)(f). It is implausible to suggest that FIPA permits an arrangement in one section and prohibits it in another.

With respect to the to the no-hire provision, however, the Court finds that Plaintiff has succeeded in stating a claim. Although Plaintiff does admit that it suggested a no-hire provision in exchange for the ability to open a new office, Plaintiff then claims that this suggestion was "forced upon" it. (Reply 19 (Dkt. No. 16).) Drawing all reasonable inferences from Plaintiff's account of the facts, it is plausible that this treatment was discriminatory.

With respect to the different set of standards between the franchisees, the Court finds that Plaintiff has succeeded in stating a claim. Defendants concede that Bain is subject to a different set of standards, but argue that the contract with Bain was signed at a materially different time than the agreements with Plaintiff. At the motion to dismiss stage, the Court must accept Plaintiff's assertion that the contracts were signed at materially similar times. And even if they were not, Defendant must still show that the different treatment was not arbitrary.

**D. Washington Consumer Protection Act**

Plaintiff's final argument is that in violating FIPA, Defendant also violated the Consumer Protection Act. As both parties acknowledge, a FIPA violation is not an automatic CPA violation. A CPA claim requires "1) an unfair or deceptive act or practice, 2) occurring in the conduct of trade or commerce, 2) affecting the public interest, and 4) and 5) causing injury to the plaintiff in his business or property." *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531 (Wash. 1986). While a FIPA violation satisfies the first two requirements, Plaintiff must still demonstrate public interest impact and harm.

Defendant raises several objections to Plaintiff's assertions that its contract negotiations affect the public interest. *Hangman Ridge* suggests that a private transaction such as this cannot meet the public interest element. *Id.* at 540. Indeed, Plaintiff is surely not among the "bargainers subject to exploitation and unable to protect themselves" contemplated in that case. However, at

this stage of the litigation, the Court must credit Plaintiff's assertions that Defendant "offers franchises to the public and other potential franchisees have the potential to be subjected to discrimination in a manner similar to that of [Plaintiff]." Accordingly, Plaintiff has stated a plausible claim for relief.

## IV. CONCLUSION

For the foregoing reasons, Defendants motion to dismiss is GRANTED in part and DENIED in part. (Dkt. No. 13.)

DATED this 2nd day of February 2011.

John C. Coughenour
UNITED STATES DISTRICT JUDGE